IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CALVIN ROSE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil No.  3:19-CV-01240-E |
| v. | § | |
| | § | |
| DALLAS COUNTY, TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment on Qualified Immunity filed by the individual Defendants in this case (Doc. No. 27).  The Court carefully considered the motion, the response, and the reply, as well as the supporting appendices, applicable law, and any relevant portions of the record.  The Court grants the motion.

### Background

Plaintiff Calvin Rose filed this lawsuit against Defendants Dallas County, Texas, and former Dallas County Sheriff Lupe Valdez, as well as L. Lang, S. King, S. Castillo, R. Hamilton, D. Adams, and J. Garrison, who are all either sergeants or officers with the Dallas County Sheriff's Office.  Plaintiff's claims arise out of medical problems he suffered while in custody at the Dallas County Jail.

The Court begins with some background on a provision of the Texas Administrative Code referred to in Plaintiff's complaint.  The provision at issue is a rule promulgated by the Texas Commission on Jail Standards.  It is part of a chapter titled "Supervision of Inmates," and the particular section cited is titled "Regular Observation by Corrections Officers."  Section 275.1 provides that facilities shall have an established procedure for documented, face-to-face

1

observation of all inmates by jailers no less than once every 60 minutes.  37 TEX. ADMIN. CODE § 275.1.  In areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined, observation shall be performed at least every 30 minutes.  *Id.*  For simplicity, the Court will refer to the provision as § 275.1.  Plaintiff alleges it was the practice of the Dallas County Jail not to conduct documented, face-to-face observation of all inmates in accordance with § 275.1, specifically those requiring observation every 30 minutes.

The following background is taken from the allegations in Plaintiff's complaint.  Plaintiff was booked into the Dallas County Jail on April 25, 2017, for a probation violation stemming from a failed drug test.  When he was booked in, Plaintiff had no injuries and was able to walk, talk, and care for himself.  He alleges that as a result of Defendants' deliberate indifference to his serious medical needs, at age 44, he has lost the ability to walk, talk, and use motor functions and will live in a nursing home for the rest of his life.

Sometime in May 2017, Plaintiff suffered multiple strokes in the jail and became catatonic. Plaintiff was displaying symptoms of stupor and motor rigidity; he was unable to speak, respond, or move.  He should have immediately been rushed to the hospital, but due to the jail's policy and procedure of not performing state-mandated observations, Plaintiff continued to suffer and deteriorate.  Plaintiff was "finally found in this catatonic state on May 28, 2017."  He was taken to the jail's acute care clinic by Defendant Hamilton and a nurse.  Defendant Lang was notified by Defendant Castillo.  It was determined that Plaintiff needed to go to the hospital for medical care. Dallas County employees put in a non-emergency call to an ambulance service to transport Plaintiff to Parkland Hospital.

Plaintiff alleges that the officers working in Plaintiff's pod at the jail should have been monitoring him as required by § 275.1.  These officers included Defendants Castillo, Hamilton,

Adams, Garrison, King and Lang.  King and Lang were in a supervisory position over Castillo, Hamilton, Adams, and Garrison.  Plaintiff contends that if these Dallas County employees had been monitoring Plaintiff as required, they would have provided medical attention much sooner than May 28, 2017, "and would have classified it as an emergency call to paramedics on May 29, 2017."  Because they had not been monitoring Plaintiff as required, they did not have accurate information to relay to paramedics.

According to the "Parkland Prehospital Care Report Summary" completed by the ambulance service, Dallas County employees—including Castillo, Hamilton, Adams, Garrison, King, and Lang—told paramedics that Plaintiff had arrived the day before and "wouldn't speak, seemingly by choice."  The report also stated that Plaintiff refused to sign it.  If Defendants Castillo, Hamilton, Adams, Garrison, King, and Lang had been monitoring Plaintiff, they would have been able to explain to the paramedics that Plaintiff was unable to speak due to his catatonic state following strokes and that he was unable to perform motor functions.

According to jail notes referenced in Parkland medical records dated May 29, 2017, Plaintiff had been unable to take care of the activities of daily living for the past few days, such as feeding himself, bathing, dressing, and grooming.  Plaintiff asserts that this shows Dallas County employees, including Castillo, Hamilton, Adams, Garrison, King, and Lang, were aware of Plaintiff's catatonic state for a few days and still refused to monitor his declining heath in accordance with the state-mandated intervals outlined in § 275.1 or to provide medical attention. Plaintiff alleges these Defendants should have known something was wrong when they delivered food to him and saw that previously delivered food had not been eaten.  The longer this continued, the more obvious the problem should have been to the Dallas County employees.  This shows the failure in the jail's policy not only encompassed ignoring the intervals established under § 275.1,

but also included failing to observe or monitor on a per meal or even daily basis.  Further, Dallas County employees were aware of Plaintiff's catatonic state for a few days before putting in a non-emergency call for an ambulance.

Parkland Hospital discharged Plaintiff not long after he arrived there; it was later the same night.  According to Parkland's "Emergency Department Nursing Patient Discharge Assessment" dated May 30, 2017 at 12:18 a.m., a copy of the discharge instructions, which included information about when to return to the emergency room, was given to the officers.  Dallas County was thus on notice of the serious nature of Plaintiff's condition and the fact that he needed to return to the emergency room if his catatonic state continued or recurred.  Dallas County was on notice that Plaintiff should have been monitored every 30 minutes.

After Plaintiff returned to the jail, the officers continued to ignore him by failing to monitor him or observe him in accordance with the state-mandated intervals, despite knowing he suffered from serious medical issues that needed to be monitored.  Plaintiff again displayed catatonic behavior.  He became mute, stopped eating and drinking, and was incontinent for the next two days.  Only after he suffered and deteriorated for two more days did the jail finally decide to transfer him to Parkland.  If the officers had monitored and observed Plaintiff every thirty minutes in accordance with the intervals mandated by § 275.1 for inmates known to be mentally ill or who would have demonstrated bizarre behavior, they would not have waited two days to transfer Plaintiff to Parkland.

On June 1, 2017, a doctor examined Plaintiff in his cell and determined he needed treatment at Parkland.  Plaintiff was again transferred to Parkland and remained there until July 21, 2017.  At Parkland, Plaintiff was diagnosed with acute renal failure, catatonia, and altered mental status.  According to the hospital's records, Plaintiff presented "with a Level 3 Stroke within the past eight

4

to seventy-two hours."  Parkland could not administer treatments for stroke victims called Tissue Plasminogen Activator and Endovascular Therapy because by the time Plaintiff arrived at the hospital, he was outside the window for these treatments.  If the officers had monitored and observed Plaintiff every 30 minutes, or even every 60 minutes, they would have been able to transfer him to the hospital in time for these treatments and he would not have suffered permanent damage.

### Plaintiff's Causes of Action

In addition to *Monell* claims against Dallas County, Plaintiff asserts claims against the individual officers in their individual capacities, and also against Valdez in her official capacity, under the Fourteenth Amendment and 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights; it provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 n.3 (5th Cir. 1999).  To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges he had a constitutional right to medical care while incarcerated as a pretrial detainee.

Plaintiff asserts a claim against the individual Defendants, except for Valdez, for their deliberate indifference to his serious medical needs.  He alleges they knew of and disregarded an excessive risk to his health and safety.  They were subjectively aware of Plaintiff's serious medical needs and aware that not providing him with immediate medical attention would increase the risk of danger and result in severe harm.  Plaintiff alleges the officers were deliberately indifferent to his serious medical needs as they refused to monitor or observe him.  Plaintiff was deprived of his

clearly established right to be free from deliberately indifferent medical care, in violation of the Fourteenth Amendment and § 1983.

Plaintiff also asserts a claim against Defendant Valdez for supervisory liability and failure to train under § 1983.  He alleges that Valdez is liable in her individual and official capacities.  He asserts Valdez failed to supervise or train the employees in Plaintiff's pod, including the six officer defendants, to follow the observation requirements of § 275.1.  The complaint alleges that Valdez's deliberate indifference to supervising and training subordinate officers and employees led to deliberate indifference to Plaintiff's serious medical needs.

Finally, Plaintiff pleads a claim against Defendants King and Lang for supervisory liability under § 1983.  He alleges Sergeants King and Lang are liable in their individual capacities based on their failure to supervise the employees in Plaintiff's pod, including Defendants Castillo, Hamilton, Adams, and Garrison, to follow the observation requirement of § 275.1.  Their conscious decision to ignore the serious risk to Plaintiff demonstrates their deliberate indifference to his constitutional rights under the Fourteenth Amendment.  King's and Lang's deliberate indifference to supervising and training subordinate officers and employees led to deliberate indifference to Plaintiff's serious medical needs was the direct and proximate cause of Plaintiff suffering further injuries.

**Qualified Immunity Legal Standard**

The seven individual Defendants have moved for summary judgment on the issue of qualified immunity.  They contend that each of them is entitled to qualified immunity because:  (1) a violation of § 275 cannot form the basis of a viable claim under § 1983; (2) alternatively, they had not been placed on fair notice that a violation of § 275 could form the basis of a viable § 1983

claim; (3) they did not violate § 275[1]; (4) Defendants' actions were objectively reasonable under well-established law, i.e., they neither denied nor unreasonably delayed Plaintiff's medical treatment; and (5) they did not act with subjective deliberate indifference, i.e., they did not deprive Plaintiff of adequate medical care for a serious medical need of which they were subjectively aware, nor fail to train or supervise.

Qualified immunity shields government officials from liability based on the performance of their discretionary functions. *See Beltran v. City of El Paso*, 367 F.3d 299, 302–03 (5th Cir. 2004). Qualified immunity protects all officials "but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). When an officer invokes qualified immunity, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact dispute as to whether the official's allegedly wrongful conduct violated clearly established law. *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020). The Court still draws all inferences in the plaintiff's favor. *Id.*

Plaintiff must establish material fact issues on two points to survive summary judgment based on qualified immunity. *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020). He must adduce facts to show Defendants violated his constitutional rights, and he must show the asserted right was clearly established at the time of the alleged misconduct. *See id.* A court may consider either condition first, and if either condition does not obtain, the officers are immune. *Id.*

---

[1] The Court notes that Defendants' summary judgment evidence includes various handwritten journals kept by the jail for the relevant time period. The jail maintains these journals to document jailers' face-to-face observations of inmates by date, time, watch, and officer. Defendants assert these journals show compliance with § 275.1.

Plaintiff alleges an episodic acts-or-omissions claim as opposed to a conditions of confinement claim. Liability for episodic acts or omissions cannot attach unless the jail official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded to that risk with deliberate indifference. *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 650 (5th Cir. 1996). In other words, to prove deliberate indifference, Plaintiff must show Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that they actually drew the inference, and disregarded the risk by failing to take reasonable measures to abate it. *Baldwin*, 964 F.3d at 326. Negligent conduct or inaction by a jail officer does not violate the due process rights of a person lawfully in custody. *Hare*, 74 F.3d at 640, 645. Deliberate indifference is an extremely high standard to meet. *Dyer*, 964 F.3d at 380.

Defendants' first three arguments in support of qualified immunity are based on the premise that Plaintiff's claims are based on alleged violations of § 275.1 of the Texas Administrative Code. They contend a violation of § 275 cannot form the basis of a viable claim under § 1983. As stated, pretrial detainees have rights under the Due Process Clause of the Fourteenth Amendment to basic human needs, including medical care, while incarcerated and therefore unable to fend for themselves. *Hare*, 74 F.3d at 640, 650; *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Although Plaintiff refers often in his complaint to Defendants' failure to follow § 275.1, the essence of his complaint is based on his Fourteenth Amendment right to reasonable medical care. By alleging that Defendants' deliberate indifference to his serious medical needs violated his Fourteenth Amendment rights, Plaintiff has alleged a constitutional violation and has cleared the first hurdle in defeating Defendants' qualified immunity defense. *See Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000).

*Claims against Castillo, Hamilton, Adams, and Garrison*

Defendants next argue that they are entitled to summary judgment because they did not violate Plaintiff's right to medical treatment. Plaintiff is required to show they acted with deliberate indifference to Plaintiff's need for medical treatment. Defendants assert he cannot show they were subjectively aware of the substantial risk posed to Plaintiff.

In his complaint, Plaintiff asserts an episodic acts-or-omissions claim for deliberate indifference to his health against all individual defendants but Valdez. In his summary judgment response, Plaintiff appears to have abandoned this claim against Sergeants King and Lang. Plaintiff argues the summary judgment evidence establishes there is at least a genuine issue of material fact as to whether Castillo, Hamilton, Adams, and Garrison "knew of and disregarded an excessive risk" to Plaintiff's life. Plaintiff's summary judgment evidence consists of the declaration of his mother, his medical records from Parkland dated May 29-30, 2017, medical records from the ambulance service in connection with his June 1, 2017 transport to Parkland, and the depositions of two Parkland nurses who treated Plaintiff. To show Defendants' awareness of his condition, Plaintiff points to evidence that on May 2, 2017, Plaintiff was unable to control his urine and was transferred to "Crisis Stabilization housing." Plaintiff's mother notified jail officials, at least a week before Plaintiff went to the hospital, of problems with her son. When she saw Plaintiff he was suffering from serious medical issues and was unable to speak with her. His mother contacted a Deputy Lemones at the jail and told him her concern.[2] Plaintiff's medical records from May 29 indicate he been mute for three days at the jail before being transferred to Parkland. The jail staffer who took Plaintiff to Parkland told hospital staff that Plaintiff had been unable to take care of the activities of daily living for the past few days. Plaintiff did not answer

---

[2] Defendants object to portions of the declaration of Plaintiff's mother on hearsay and other grounds. Even considering the evidence Defendants object to, Plaintiff has still not met his summary judgment burden.

some of the nurse's questions and shook his head to indicate he was not in pain. His medical records from June 1, 2017, state that he was in a catatonic state per "the staff in the informory [sic]. [Patient] has HX of this type of behavior."  Further, Plaintiff presented with a "Level 3 Stroke" within 8 to 72 hours.

Plaintiff summarizes this evidence as follows:  Defendants were responsible for Plaintiff; Plaintiff had a history of becoming catatonic because of strokes; Plaintiff's mother notified the jail that her son's behavior indicated a medical problem; Plaintiff was unable for many days to go to the toilet, shower, or do other activities of daily living; and he could not speak.  He also points to Defendants' summary judgment evidence to show that Defendants went by Plaintiff's cell nearly every half hour.  Plaintiff maintains this evidence establishes that Defendants were aware he was suffering from a serious medical condition but did not secure treatment for him.

The Court concludes Plaintiff has failed to raise a genuine issue of fact on the issue of whether Defendants knew of a serious risk to Plaintiff's health.  There are four Defendants who Plaintiff asserts acted with deliberate indifference to his serious medical needs, Castillo, Hamilton, Adams, and Garrison.  Plaintiff has not presented any evidence or argument by which the Court can examine the conduct of each individual Defendant's entitlement to qualified immunity.  *See Jacobs*, 228 F.3d at 395 (conduct of each defendant who has been sued in his individual capacity should be examined separately).

In addition, although Plaintiff's complaint includes allegations that would help support an inference the officers had subjective knowledge of Plaintiff's serious medical issues, he did not present any summary judgment evidence to back up these allegations.  For example, Plaintiff's complaint alleges Castillo, Hamilton, Adams, and Garrison should have known something was wrong with Plaintiff when they delivered food to him and saw the food they previously delivered

10

had not been eaten.  In addition, the complaint alleges a report completed by the ambulance service in regard to Plaintiff's first trip to Parkland shows Castillo, Hamilton, Adams, and Garrison told paramedics Plaintiff wouldn't speak.  Plaintiff does not mention these facts in his summary judgment response and has not directed the Court to evidence supporting these allegations.

Further, the summary judgment evidence Plaintiff does direct the Court to does not create a fact issue.  The complaint alleges that when Plaintiff was discharged from Parkland on May 30, 2017, a copy of the discharge instructions, including signs and symptoms of when to return to the emergency room, was given to the officers, including Castillo, Hamilton, Adams, and Garrison. Plaintiff alleges they were therefore on notice of the serious nature of Plaintiff's medical condition and the need for treatment should his catatonic state continue or recur.  The summary judgment merely shows that when Plaintiff was discharged on May 30, a copy of the discharge instructions was given to "officers."  One of the nurses testified in her deposition that someone at the jail would read the information in the discharge packet.  She explained that when a patient from the jail arrives, the officers with him hand Parkland staff an orange packet with the patient's information in it.  When a jail patient is discharged, Parkland staff gives the packet back to the officers, along with the discharge papers.  The discharge papers are outside the orange packet.  The nurse did not know whether any of the individual Defendants had anything to do with the information that went into Plaintiff's packet.  There is nothing to create a fact issue about whether these particular Defendants ever saw Plaintiff's discharge instructions.

Likewise, although the Parkland medical record from June 1, 2017 indicates Plaintiff had a history of being catatonic, it does not, as Plaintiff suggests, expressly link the catatonia to strokes. And there is nothing to indicate the particular Defendants in this case possessed knowledge that

he had such a history.  Defendants presented evidence that inmates' medical information is maintained by Parkland staff and not shared with jail staff for confidentiality reasons.

It is not clear from the evidence when or how often each individual Defendant saw Plaintiff in the jail.  Even if the Court assumes that from making the rounds in the jail, Defendants had some knowledge of Plaintiff's muteness and inability to take care of the activities of daily living, that knowledge is just not sufficient to raise a fact issue as to Defendants' knowledge of any excessive risk to Plaintiff's health. There is nothing to show that any of them had actual knowledge of Plaintiff's medical circumstances or his risk of stroke.  For these reasons, Plaintiff has failed to raise a fact issue regarding his claims against Garrison, Adams, Castillo, and Hamilton.

*Claims Against Lang, King, and Valdez*

Defendants also argue that Valdez, Lang, and King are entitled to summary judgment on Plaintiff's supervisory liability claims against them.  Plaintiff's claims against Valdez are based on her alleged failure to train or supervise the other individual Defendants to observe inmates per the requirements of § 275.1.  Plaintiff's claims against King and Lang are based on their failure to supervise and train Castillo, Hamilton, Adams, and Garrison to follow the observation requirements.  Plaintiff does not allege that they personally participated in an act that caused a deprivation of his right to medical care.

To survive summary judgment against a § 1983 claim for supervisory liability, a plaintiff is required to create a dispute of fact that (1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 397 (5th Cir. 2017).  With respect to the third prong, deliberate indifference requires proof that a municipal actor disregarded a

12

known or obvious consequence of his action.  *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

In his summary judgment response, Plaintiff merely refers to the same evidence he cited in connection with the other defendants and asserts it creates a fact issue.  This evidence did not raise a fact issue on the issue of King's, Lang's and Valdez's deliberate indifference.  Plaintiff has failed to meet his burden to overcome the qualified immunity defense.

The Court grants the individual Defendants' motion for summary judgment on qualified immunity.  The Court dismisses with prejudice Plaintiff's claims against Defendants Lang, King, Castillo, Hamilton, Adams, and Garrison.  The Court dismisses with prejudice Plaintiff's claims against Valdez in her individual capacity only.  *See Matherne v. Wilson*, 851 F.2d 752, 759 (5th Cir. 1988) (protection of qualified immunity extends to an official only in individual capacity).

**SO ORDERED**.

Signed September 30, 2020.

Ada Brown
UNITED STATES DISTRICT JUDGE